IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KATE SOHOLT,

                     Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

                     Defendant.

OPINION AND ORDER

18-cv-751-wmc

Plaintiff Kate Soholt seeks judicial review of a final decision by defendant Andrew M. Saul, Commissioner of Social Security, finding that she was not disabled within the meaning of the Social Security Act. Plaintiff argues that the administrative law judge ("ALJ") failed to adequately consider Soholt's subjective complaints regarding her right extremity limitations. For the reasons set forth below, the court will affirm the commissioner's decision and cancel the oral argument scheduled for November 20, 2019.

BACKGROUND[1]

A. Overview of Claim

On February 11, 2015, plaintiff Kate Soholt applied for supplemental security income, alleging her disability began on February 11, 2000. (AR at 14.) Soholt's alleged disability is based on a number of conditions, but because her appeal to this court is limited only to the ALJ's consideration of her right extremity limitations, the court will focus its discussion on evidence related to those limitations.

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #6.

## B. ALJ's Decision

Soholt's disability claim was denied initially and denied again upon reconsideration. (AR at 14.) On appeal, ALJ Jeffrey W. Hart held a video hearing on March 16, 2017, at which Soholt appeared personally and by counsel. (AR at 14.) During that hearing, Soholt testified about various limitations on the use of her right shoulder, elbow, arm, wrist and fingers. (*See* AR at 30-66.) Regarding her right shoulder, Soholt testified that: after two surgeries, she could only lift about ten pounds with her right arm; frequently used her left to help lift; and "maybe at least once a day," she is unable to lift her arm up fully 180 degrees. (AR at 30-33, 44-46.) Soholt also testified that she had surgery on her right elbow, but that it did not fully heal, and she was unable to straighten it out all the way due to pain. (AR at 33, 46-48.) Soholt further explained that she could not repetitively reach out and grab things, and that she could only extend her right arm for about five minutes before she would have to take a ten-minute rest. (AR at 47-48.) With regard to her right wrist, Soholt next testified that at least four or five times during the day, it would lock up for at least thirty minutes during which time she could not use her wrist. (AR at 48-49.) Finally, Soholt testified to limitations in her fingers and her ability to grasp. (AR at 48-50.) Specifically, she described getting sharp pains in her thumb that make it difficult for her to move it, which affects her ability to grip and pinch such that sometimes she even has difficulty buttoning or zipping. (AR at 48-50.)

After the hearing, the ALJ issued a written decision in which he considered whether Soholt was disabled using the five-step sequential framework set forth in 20 C.F.R. § 404.1520. (AR at 14-21.) In determining whether Soholt had any severe impairments

at step two, the ALJ specifically addressed Soholt's right extremity limitations:

> In addition, the claimant alleges disability due to carpal tunnel syndrome, a history of right rotator cuff repair and symptoms of fibromyalgia. However, when considered singly and in combination, these impairments do not cause more than minimal limitations in the ability to perform basic work activities and are therefore non-severe. . . . [T]he record indicates that subsequent to undergoing right shoulder arthroscopy, the claimant began physical therapy within four weeks of surgery with a good rehabilitation potential (Ex. 3F, 5; Ex. 9F, 18). In fact, by September 2016, diagnostic testing of the right shoulder showed evidence of only mild generative changes (Ex. 9F, 83). Lastly, as to the claimant's history of carpal tunnel syndrome, the record shows that the claimant underwent carpal tunnel release of the ulnar nerve at the wrist (Ex. 10F, 1). Subsequent to nerve release in her right arm, treatment notes from as recent as January 2017 indicate that the claimant reported no further numbness or tingling in her arms. Notably, the treatment notes indicate that the claimant was neurovascularly intact in her hand with negative impingement signs (Ex. 10F, 21).

(AR at 16-17.)

At step three, the ALJ next concluded that Soholt did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 17-18.) And at the fourth step, the ALJ considered Soholt's residual functional capacity ("RFC"), finding that while her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR at 18-19.)

Ultimately, the ALJ found that Soholt's RFC allowed her to "perform light work" with some mental limitations. (AR at 18.) Accordingly, the ALJ concluded, "there are jobs

3

that exist in significant numbers in the national economy that the claimant can perform," and she was not disabled within the meaning of the Act. (AR at 20-21.)

**C. Medical Record**

The medical record contains a number of references to Soholt's right shoulder, elbow and wrist pain. As an initial matter, treatment notes between 2013 and 2015 indicate pain and some loss of motion and function in Soholt's right extremities. Specifically, on August 8, 2013, Soholt consulted with a rheumatologist due to joint pain and other symptoms. (AR at 404.) Finding no evidence of a connective tissue disease, the provider noted that Soholt "gets occasional numbness in her hands," and suggested that carpal tunnel might be a cause. (AR at 404-05.) In November and December of 2014, Soholt also had three appointments with Dr. Daniel Mark for reported right shoulder pain, as well as right wrist pain and numbness. (AR at 398-401.) Mark's physical examinations of Soholt revealed 90 degrees of active forward flexion and abduction in her shoulder, along with diffuse tenderness and bilateral carpal tunnel syndrome in her wrists, with the right more severe than the left, but no atrophy and 5/5 grip strength. (AR at 400-01.) On December 16, 2014 and January 20, 2015, Soholt further consulted with Dr. Thomas Kaiser for her right shoulder pain problems. (AR at 395-98.) After the second visit, Dr. Kaiser noted Soholt's "[r]ight shoulder pain with progressive loss of motion" and recommended a shoulder arthroscopy. (AR at 395.)

Soholt underwent her first right shoulder surgery on February 4, 2015. (AR at 383.) One day after the surgery, Soholt reported pain, but demonstrated "wrist, elbow hand active range of motion" and her "rehab potential" was rated as "good." (AR at 392-93.)

On November 10, 2016, Soholt underwent four more surgical procedures, including revision rotator cuff repair again in her right shoulder, right ulnar nerve transposition, right carpal tunnel release and release of right ulnar nerve at the wrist. (AR at 477.)

Two months after these surgeries, Dr. John Horan -- the surgeon who conducted Soholt's November procedures -- wrote that Soholt was doing "extremely well, amazingly so." (AR at 612.) In addition, Dr. Horan's treatment notes indicate that Soholt reported "no numbness or tingling in her arms," having "full range of motion of her shoulder and no pain in her shoulder," and a "neurovascularly intact" right hand with a negative impingement sign and "no limitation in range of motion." (AR at 612.) As a result, Dr. Horan cleared Soholt for "full duty work" by January 30, 2017. (AR at 612.)

OPINION

Judicial review of a final decision by the Commissioner of Social Security is authorized by 42 U.S.C. § 405(g). An ALJ's findings of fact are considered "conclusive," so long as they are supported by "substantial evidence." § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the Commissioner's findings, the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In particular, an ALJ's findings regarding a claimant's credibility are given special deference, and will be overturned only if "patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).

At the same time, the court must conduct a "critical review of the evidence" before

affirming the Commissioner's decision. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Even when adequate evidence exists in the record to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the final conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 2006).

Plaintiff argues that a remand is warranted here because the ALJ did not properly credit Soholt's subjective complaints regarding her right extremity limitations. Specifically, plaintiff argues that "the ALJ simply did not address [Soholt's] right extremity limitations in his decision" and failed to explain "why [Soholt's subjective complaints were] not considered in a meaningful way." (Pl.'s Br. (dkt. #9) 32, 40.) Although not entirely clear, the court understands plaintiff to argue both that (1) the ALJ's decision was not supported by substantial evidence and (2) the ALJ's explanation was deficient in that he did not build an "accurate and logical bridge between the evidence and the result." (Pl.'s Br. (dkt. #9) at 32 (quoting *Sarchet*, 78 F.3d at 307).)

In his responsive brief, the Commissioner counters that: (1) the ALJ's finding that Soholt's right extremity limitations were non-severe *was* supported by substantial medical evidence; and (2) remand is not warranted as any alleged error was harmless, given no doctor opined that Soholt had greater physical limitations than those found by the ALJ. Plaintiff did not file a reply brief, and thus did not address either of defendant's arguments.

First, to the extent that plaintiff argues that the ALJ's explanation was deficient, the court simply disagrees. Contrary to plaintiff's assertion that the ALJ did not address Soholt's right extremity limitations, the ALJ's decision included a detailed review of the objective medical evidence regarding her physical limitations, including a discussion of her right shoulder surgery and subsequent physical therapy, diagnostic testing of her right shoulder, and her history of carpal tunnel syndrome, including her carpal tunnel release surgery and subsequent treatment notes. (AR at 17.) The ALJ further explained that whether considering this evidence singly and in combination, Soholt's physical impairments did not cause more than minimal limitations according to her treating physicians' medical notes, including those that indicate Soholt had good rehabilitation potential after her shoulder surgery, diagnostic testing on her shoulder in 2016 showing "evidence of only mild generative changes," and treatment notes as late as January 2017 indicating that, after her carpal tunnel release surgery, her hand was neurovascularly intact with negative impingement signs *and* Soholt reported no further numbness or tingling in her arms. In light of this evidence, the ALJ found that Soholt's subjective complaints regarding the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence." (AR at 18-19.)

That the ALJ's discussion of the medical evidence of Soholt's right extremity limitations occurred at step two of the sequential process but was not explicitly repeated in the ALJ's step four analysis was also not error. As the Seventh Circuit instructs, an ALJ's decision should be read "as a whole." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (noting that it is proper to "consider the ALJ's treatment of the record evidence in support

of both his conclusions at steps three and five"). Moreover, the ALJ here incorporated his analysis of Soholt's right extremity limitations by reference, citing to "the physical impairments discussed above." (AR at 18.)

Arguably, the most significant weakness in the ALJ's analysis is his failure to address in greater detail Soholt's subjective testimony regarding her limitations. Although the ALJ acknowledged that Soholt had reported physical symptoms that, in combination with mental symptoms, allegedly amounted to a disability, he did so only in a general manner, and did not specifically discuss Soholt's hearing testimony. Nevertheless, an ALJ's credibility finding need not be perfect, and is generally only to be overturned if deemed "patently wrong." *See Shideler*, 688 F.3d at 312. More specifically, "the ALJ need not mention every strand of evidence in her decision but only enough to build an 'accurate and logical bridge' from evidence to conclusion." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). Here, the ALJ's detailed consideration of the medical evidence of Soholt's right extremity limitations logically and accurately supported his decision not to fully credit Soholt's subjective complaints, as well as his ultimate finding of no disability. Especially given the special deference that an ALJ's credibility determinations are entitled to, *Shideler*, 688 F.3d at 312, the ALJ's conclusion here was more than sufficiently supported.

Finally, any argument that the ALJ's determination regarding Soholt's right extremity limitations was not supported by substantial evidence is unsupportable. Here, the ALJ determined that Soholt's right extremity condition was non-severe and that, as a result, Soholt could perform light work with some mental limitations. To support these findings, the ALJ cited to various medical records that indicated only specific, mild

limitations and generally normal functioning. Most compellingly, the ALJ referenced Dr. Horan's treatment note from January 2017, clearing Soholt for "fully duty work" two months after she had undergone four surgical procedures for her right extremity conditions. In that note, Dr. Horan explained that Soholt was doing "extremely well" and reported "no numbness or tingling in her arms," "full range of motion of her shoulder and no pain in her shoulder," and her hand was "neurovascularly intact" with a negative impingement sign and "no limitation in range of motion." (AR at 612.) The only evidence plaintiff presents that contradicts the ALJ's conclusion is Soholt's subjective testimony during the hearing itself. (Pl.'s Br. (dkt. #9) 32-40.) Regardless, the evidence supporting the ALJ's finding is "more than a mere scintilla," such that a reasonable mind might well accept it as adequate to support his conclusion. *See Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986). Accordingly, the conclusion will be upheld.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security is AFFIRMED and plaintiff Kate Soholt's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 19th day of November, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge